# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**STRUCTSURE SCAFFOLDING SOLUTIONS, LLC,**
**Employer Below, Petitioner**

**FILED**
**March 25, 2024**
C. CASEY FORBES, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 23-ICA-451**          (JCN: 2022022469)

**KENNETH ELDRIDGE,**
**Claimant Below, Respondent**


## MEMORANDUM DECISION

Petitioner StructSure Scaffolding Solutions, LLC ("StructSure") appeals the September 13, 2023, order of the Workers' Compensation Board of Review ("Board"). Respondent Kenneth Eldridge timely filed a response.[1] StructSure did not file a reply. The issue on appeal is whether the Board erred in reversing the claim administrator's order, which had denied the claim, and holding the claim compensable.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

As a bit of background, this case concerns a workers' compensation claim that Mr. Eldridge filed following his alleged exposure to welding fumes at the John Amos Power Plant, which is owned and operated by American Electric Power. Mr. Eldridge was an employee of StructSure, a third party contracted to build scaffolding and temporary work platforms at the John Amos plant. At the same time, another third party had been contracted to perform welding in the same general vicinity in which Mr. Eldridge was building scaffolding.

On March 25, 2022, Mr. Eldridge presented to Southern Ohio Medical Center ("SOMC") Pulmonary and Critical Care with symptoms of respiratory distress and was admitted to the hospital.[2] Mr. Eldridge came under the care of Deanna Potter, CNP, who

---

[1] StructSure is represented by James W. Heslep, Esq. Mr. Eldridge is represented by Robert F. Vaughan, Esq.

[2] The parties state that Mr. Eldridge first sought treatment on March 21, 2022; however, there are no clinical notes in the record that are dated March 21, 2022.

worked in the same office as Elie Saab, M.D. Clinical notes from SOMC Pulmonary and Critical Care dated March 28, 2022, indicate that Mr. Eldridge reported a work-related exposure to welding fumes. Specifically, Mr. Eldridge reported that he had inhaled fumes in a confined space and that the fumes were made up of a combination of Arcaloy 308L-16 welding electrodes and stainless steel. The medical records indicate that a safety data sheet regarding the Arcaloy 308L-16 welding electrodes was obtained, and that the respiratory information section included significant respiratory irritation from short-term exposure.[3]

Mr. Eldridge reported that approximately thirty minutes following his exposure, he developed a headache with scalp sensitivity, dyspnea (which continued to progress significantly), one episode of vomiting, abdominal pain, and nausea. Mr. Eldridge stated that his nausea and abdominal pain had since resolved, but that he continued to experience difficulty breathing. Mr. Eldridge was diagnosed with acute respiratory failure with hypoxia.

On April 21, 2022, Mr. Eldridge had a follow up appointment at SOMC and continued to complain of shortness of breath on exertion and with talking, an occasional cough, and occasional wheezing. He was assessed with chemical pneumonitis, community-acquired pneumonia, and pneumonia.

On April 29, 2022, Kim Brown, the Safety and Compliance Administrator for StructSure, authored correspondence indicating her belief that Mr. Eldridge had not been exposed to high levels of fumes that would have contributed to Mr. Eldridge's pneumonia. Ms. Brown stated that appropriate safety procedures and protocols were followed and claimed that Mr. Eldridge did not perform work in or near a regulated area in which any potential exposure could have occurred. She attached a timeline of events, supervisor statements, and documents pertaining to her investigation to the letter, which indicated that no other reports of smoke or fumes had been made and that welding was ceased when the scaffolding workers needed to make modifications.

---

[3] This data sheet includes hazard statements indicating that Arcaloy 308L-16 welding electrodes can cause damage to organs through prolonged or repeated exposure. Other precautionary statements indicate that one should not breathe the dust or fumes, and the toxicological information noted that:

> welding fumes may result in discomfort such as: dizziness, nausea, or dryness or irritation of nose, throat, or eyes. Fumes can aggravate asthma, bronchial conditions, or allergies. Individuals with allergies or impaired respiratory function may have symptoms worsen by exposure to welding fumes. Excessive inhalation of iron oxides fumes or dust can lead to irritation of the respiratory tract. May cause allergic respiratory reaction.

Mr. Eldridge returned to SOMC on June 9, 2022, and reported that his symptoms had slightly improved. He continued to complain of shortness of breath and wheezing. Mr. Eldridge was assessed with chemical pneumonitis and wheezing.

On June 21, 2022, Syam Stoll, M.D., performed a physician review and opined that chemical pneumonitis was not supported by the "limited current objective medical records" he was provided to review. Dr. Stoll based his opinion, in part, on the safety sheet, which he opined indicated that any acute inhalation would result in asthmatic or allergy-type symptoms and not pneumonia or sepsis, which are bacterial. He pointed out that chemical pneumonitis would not respond to antibiotics. Dr. Stoll also stated that the imaging studies did not support a diagnosis of chemical pneumonitis, which would have revealed extensive diffuse pulmonary edema. However, Mr. Eldridge's CT scan revealed only moderate bilateral patch infiltrates consistent with pneumonia. Dr. Stoll reiterated that the objective medical evidence did not substantiate chemical pneumonitis but stated that if further objective medical documentation could be provided to substantiate the diagnosis, then causality and compensability may be reconsidered.

By order dated June 27, 2022, the claim administrate rejected the claim, finding that the disability complained of was not due to an injury or disease received in the course of and resulting from employment. Mr. Eldridge protested.

Mr. Eldridge continued to be treated by Ms. Potter and Dr. Saab at SOMC Pulmonary and Critical Care. On January 19, 2023, Dr. Saab examined Mr. Eldridge and opined that he had sustained chemical pneumonitis through occupational exposure. Dr. Saab subsequently authored correspondence on February 21, 2023, in which he disagreed with Dr. Stoll and indicated that Mr. Eldridge had suffered an occupational exposure resulting in an acute lung injury, secondary to Arcaloy 308L-16. Dr. Saab detailed Mr. Eldridge's report of the exposure and how he was working on scaffolding near the bottom of a boiler. According to Dr. Saab, Mr. Eldridge reported that the area was smoky and that he developed a severe headache. Mr. Eldridge stated that, upon exiting the boiler, he encountered a welder in a fresh air supply mask who pointed at Mr. Eldridge to exit in another direction. Dr. Saab noted that Mr. Eldridge subsequently developed abdominal pain, nausea, and weakness.

Dr. Saab explained that Mr. Eldridge's imaging studies did not support a diagnosis of pneumonia, but instead suggested that Mr. Eldridge's exposure to fumes caused the injury. Also, Mr. Eldridge did not respond to antibiotics, which suggested chemical pneumonitis rather than bacterial pneumonia. Dr. Saab acknowledged that the diagnosis of community-acquired pneumonia had been included in the medical documentation but described the diagnosis as a "wastebasket diagnosis." Dr. Saab explained that when imaging studies show infiltrate in the chest, it is called pneumonia and that 50% of the time patients receive antibiotics because no pathogen has been identified. However, Dr. Saab stated that "one must correlate to the information given, including the history of the

presenting illness, [p]hysical exam, and labs and imaging." Dr. Saab concluded, "In the spirit of scientific honesty, this patient never had community-acquired pneumonia. [Had he] not had an exposure, he probably would not have diffuse alveolitis."

In a report dated March 7, 2023, George Zaldivar, M.D., opined that the records did not support a claim of chemical exposure. Dr. Zaldivar opined that chemical pneumonitis could occur due to exposure to the particular welding rods used here and that Mr. Eldridge's presentation was "certainly possible after fume inhalation." However, Dr. Zaldivar stated that community-acquired pneumonia can also present in the same manner and that Mr. Eldridge's white blood cell count was elevated when he presented to SOMC, which was indicative of an infection. Dr. Zaldivar also noted that StructSure's documentation indicated that care was taken to prevent individuals who were not welding from being exposed to welding fumes and that Mr. Eldridge's assertions to the contrary were not supported. Dr. Zaldivar opined that, "unless Mr. Eldridge can document that the protocol followed by his company was broken by him, specifically, or other workers building the scaffold, just as he was, the information provided in these records do not support a claim of chemical exposure."

Dr. Zaldivar authored an addendum to his report on May 4, 2023, in which he stated that he had since reviewed Mr. Eldridge's abdominal and chest CT scans and a chest x-ray, which showed bilateral lower lobes pneumonia. Dr. Zaldivar stated that because the pneumonia was predominantly located in the lower lobes, he did not believe that Mr. Eldridge had sustained an inhalation injury.

By order dated September 13, 2023, the Board reversed the claim administrator's order rejecting the claim and, instead, held the claim compensable for chemical pneumonitis. Initially, the Board found that there was an equal amount of evidentiary weight regarding exposure and, pursuant to West Virginia Code § 23-4-1g (2003), resolved that issue in favor of Mr. Eldridge.[4] The Board went on to discuss the differences in the reports of Drs. Saab, Stoll, and Zaldivar and, ultimately, concluded that Dr. Saab's report was the most credible and persuasive. The Board noted that Dr. Saab was the only physician to examine Mr. Eldridge. The Board also noted that Dr. Zaldivar admitted that "chemical pneumonitis could occur from inhalation of welding rod fumes and that chemical pneumonitis would have presented itself such as [Mr. Eldridge] presented." Further, the Board found that Dr. Stoll opined that chemical pneumonitis does not respond to antibiotics, and Dr. Saab reported that Mr. Eldridge did not respond to antibiotics. The Board concluded that Mr. Eldridge "was exposed to welding rod fumes and that this

---

[4] W. Va. Code § 23-4-1g(a) (2003) provides, in part, that "[i]f, after weighing all of the evidence regarding an issue in which a claimant has an interest, there is a finding that an equal amount of evidentiary weight exists favoring conflicting matters for resolution, the resolution that is most consistent with the claimant's position will be adopted."

isolated fortuitous event occurred in the course of and resulting from [Mr. Eldridge's] employment." StructSure now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n*, 247 W. Va. 550, 555, 882 S.E.2d 916, 921 (Ct. App. 2022).

On appeal, StructSure argues that Mr. Eldridge's lung condition does not meet the standards of compensability for an occupational disease and, therefore, the Board's order must be reversed. According to StructSure, Mr. Eldridge failed to submit sufficient evidence to establish the six factors for an occupational disease as set forth in West Virginia Code § 23-4-1(f) (2021) and, critically, failed to establish a causal connection between his alleged exposure to the welding fumes and his lung condition. StructSure contends that Mr. Eldridge's allegations are the only evidence of any alleged exposure and that StructSure submitted evidence of ventilation at the jobsite to contradict Mr. Eldridge's assertions. StructSure further argues that the medical evidence does not support an occupational exposure. For example, StructSure claims that Mr. Eldridge failed to allege any occupational exposure on initial treatment of his symptoms and was later diagnosed with community-acquired pneumonia, which is a disease of ordinary life to which all individuals are exposed on a regular basis. According to StructSure, further lending support to a diagnosis of community-acquired pneumonia were the reports of Drs. Stoll and Zaldivar, in which they opined that Mr. Eldridge did not have chemical pneumonitis. StructSure argues that Dr. Saab did not initially treat Mr. Eldridge but "assigned causation of [Mr. Eldridge's] condition to chemical exposure [without] a thorough review of the initial clinical notes, imaging, and the employer's report as to the ventilation of the jobsite." StructSure claims that Dr. Zaldivar's report is the most thorough in terms of his review of

5

the facts, diagnosis, and treatment, and that the Board should have relied on his opinion rather than Dr. Saab's report.

Upon review, we find no clear error in the Board's order reversing the claim administrator's order and holding the claim compensable. In order for an injury to be held compensable under the Workers' Compensation Act, three elements must coexist: (1) a personal injury, (2) received in the course of employment, and (3) resulting from that employment. *Jordan v. State Workmen's Comp. Comm'r*, 156 W. Va. 159, 163, 191 S.E.2d 497, 500 (1972) (citation omitted). Said another way, "A claimant must establish compensability through competent evidence demonstrating that he or she suffers from a disability incurred in the course of and resulting from his or her employment and that there is a causal connection between the disability and the employment." *Lambert v. Contura Energy, Inc.*, No. 21-0868, 2023 WL 5978198, at *4 (W. Va. Sept. 14, 2023) (memorandum decision) (citing *Deverick v. State Comp. Dir.*, 150 W. Va. 145, 144 S.E.2d 498 (1965)). However, "[w]hile '[a] claimant in a workmen's compensation case must bear the burden of proving his claim [ ] in doing so it is not necessary to prove to the exclusion of all else the causal connection between the injury and the employment.' Syl. Pt. 2, in part, *Sowder v. State Workmen's Compensation Comm'r*, 155 W. Va. 889, 189 S.E.2d 674 (1972)." Syl. Pt. 4, *Dodson v. Workers' Comp. Div.*, 210 W. Va. 636, 558 S.E.2d 635 (2001).

At the outset, we note that StructSure attempts to characterize Mr. Eldridge's diagnosis as an occupational disease rather than an occupational injury. We decline to analyze Mr. Eldridge's claim as an occupational disease. The record is clear that the Board treated Mr. Eldridge's claim as an occupational injury; StructSure fails to cite to the record demonstrating that it raised the issue of an occupational disease before the Board; and the record is sufficient to establish that Mr. Eldridge's one-time exposure to the welding fumes satisfied the requirement for a definite, isolated, fortuitous event. *See* Syl. Pt. 3, *Barnett v. State Workmen's Comp. Comm'r*, 153 W. Va. 796, 172 S.E.2d 698 (1970) ("'A disability incurred by an employee in the course of his employment, not directly attributable to definite, isolated, fortuitous occurrence, is not compensable under the State Compensation Act.' Syllabus, point 1, *Adams v. G. C. Murphy Co.*, 115 W.Va. 122, 174 S.E. 794.").

We conclude that sufficient evidence exists to support the Board's conclusion that Mr. Eldridge sustained an occupational injury to his lungs. Mr. Eldridge's testimony coupled with Dr. Saab's report are sufficient to establish that Mr. Eldridge was exposed to welding fumes while working and that this exposure led to his developing chemical pneumonitis. Indeed, even Dr. Zaldivar, upon whom StructSure relies, admitted that chemical pneumonitis can result from inhalation of welding fumes and that Mr. Eldridge's presentation of symptoms could result from inhalation of welding fumes. Although Dr. Zaldivar opined that StructSure's documentation indicated that care was taken to prevent exposure, and StructSure points to its clean ventilation records, Mr. Eldridge was not

required "to prove to the exclusion of all else the causal connection between the injury and the employment." *Dodson*, 210 W. Va. at 638, 558 S.E.2d at 637, syl. pt. 4.

Further, although Dr. Stoll opined that Mr. Eldridge developed community-acquired pneumonia, Dr. Saab rebutted this assertion. Dr. Saab specifically opined that Mr. Eldridge did not respond to antibiotics, which was indicative of chemical pneumonitis rather than pneumonia, and that imaging studies were likewise indicative of chemical pneumonitis rather than bacterial pneumonia. Moreover, Dr. Saab was the only physician who opined on the issue of causality to physically examine Mr. Eldridge. Ultimately, the Board found that Dr. Saab's explanation of chemical pneumonitis was more persuasive. Given the evidence before us, we cannot find that the Board was clearly wrong in relying on Dr. Saab's report.

Accordingly, we affirm the Board's September 13, 2023, order.

Affirmed.

**ISSUED:** March 25, 2024

**CONCURRED IN BY:**

Judge Charles O. Lorensen
Judge Daniel W. Greear


Chief Judge Thomas E. Scarr, not participating

7